Submitting Counsel on Signature Page

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| UNIVERSITY MEDICAL PHARMACEUTICALS CORP., a California corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ISIS BIOPOLYMER, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No.  SACV10-01584 DOC (Ex)<br><br>**Joint Rule 26(f) Report**<br><br>Scheduling Conf.: January 31, 2011<br>Time:             8:30 a.m.<br>Place:            Courtroom 9-D<br>Judge:            David O. Carter<br><br>Action Filed:     October 18, 2010 |
| ISIS BIOPOLYMER, INC., a Delaware corporation,<br><br>　　　　Counterclaimant,<br><br>　v.<br><br>UNIVERSITY MEDICAL PHARMACEUTICALS CORP., a California corporation,<br><br>　　　　Counterdefendant. | |

|   |   |
|---|---|
| 1 | Plaintiff and Counterdefendant University Medical Pharmaceuticals Corp. ("UMP") and Defendant and Counterclaimant Isis Biopolymer, Inc. ("Isis") (the "Parties") submit this Joint Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f), Local Civil Rule 26-1, and the Court's November 18, 2010 Order Setting Scheduling Conference. |

Counsel for the Parties conducted their meet-and-confer on January 7, 2011 and exchanged drafts of their respective portions of the Joint Rule 26(f) Report thereafter.

## I. A SHORT FACTUAL SUMMARY OF THE CASE AND OF CLAIMS AND DEFENSES

### A. Short Factual Summary of Case

This case arises out of UMP's and Isis's contractual relationship and related dealings. UMP is in the business of developing, marketing, and distributing skin care products sold to retailers and directly through consumer channels. Isis is in the business of developing technologies for delivery of transdermal medications.

UMP and Isis entered into an Exclusive Supply Agreement ("ESA") on October 30, 2009, whereby Isis was to assemble and supply certain cosmeceutical products to UMP. The ESA contemplated other agreements, including acceptance agreements. UMP and Isis entered into an acceptance agreement on November 16, 2009, which identified the "Brow Patch" as an Exclusive Product to be supplied by Isis and established certain obligations for both Parties. UMP and Isis also entered into a non-disclosure agreement regarding their respective proprietary information and materials.

Disagreements between UMP and Isis arose in 2010 and UMP filed this lawsuit on October 18, 2010. Isis filed counterclaims against UMP on November 18, 2010, which were amended on December 13, 2010.

### B. UMP's Claims and Isis's Defenses

In its Complaint, UMP alleges that Isis wrongfully sought price

1  increases under the ESA and, among other things, failed to provide pricing
2  information requested by UMP.  UMP further alleges that Isis provided defective
3  and/or non-conforming products as set forth in the agreement and per the Parties'
4  understanding of the agreed-upon product specifications.  Lastly, UMP asserts that
5  Isis has failed to return certain UMP materials which contain confidential and
6  proprietary information.
7         Based on these allegations, UMP asserts the following claims: (1)
8  breach of contract; (2) breach of the express warranty; (3) breach of the implied
9  covenant of good faith and fair dealing; and (4) conversion.
10        Isis denies UMP's material allegations and contends that it should be
11 excused from any payment obligations to UMP.  Isis also asserts fourteen (14)
12 affirmative defenses including, among others, unclean hands, estoppel, waiver,
13 failure to mitigate, unjust enrichment, and that UMP's claims are too remote and
14 speculative.

15        **C.    Isis's Counterclaims and UMP's Defenses**
16        In its counterclaims, Isis alleges that UMP failed to pay Isis – either in
17 a timely manner or at all – for hundreds of thousands of patches Isis invoiced and
18 supplied to UMP, leading to Isis issuing "notices to cure" to UMP before this action
19 began.  Isis also asserts that UMP improperly failed to make exclusivity payments,
20 refused to enter into an exclusivity agreement for a certain type of patch, and failed
21 to meet a minimum purchase commitment.  Isis further contends that UMP failed to
22 return Isis's property, including confidential and proprietary information and is
23 using such information in connection with a different supplier.  Lastly, Isis alleges
24 that UMP has intentionally attempted to devalue and injure Isis and to put Isis out
25 of business.
26        Based on these allegations, Isis asserts the following claims:  (1)
27 breach of contract; (2) conversion; (3) violation of California's trade secret act; (4)
28 unfair competition in violation of California Business & Professions Code § 17200

*et seq.*; and (5) breach of the duty of good faith and fair dealing.

UMP denies Isis's material allegations and contends that it should be excused from any payment obligations to Isis. UMP also asserts twenty-one (21) affirmative defenses, which include, among others, estoppel, waiver, unjust enrichment, and that Isis's claims are too remote and speculative.

## II. SYNOPSIS OF PRINCIPAL ISSUES

UMP believes that there are nine principal issues in the case:

- Isis's failure to use commercially reasonable efforts to minimize pricing for its components.
- Isis's actions with regard to imposing price increases.
- Isis's failure to provide UMP information regarding price increases.
- Isis's failure to deliver non-defective and/or conforming products.
- Isis's failure to return UMP's property and proprietary materials still in Isis's possession.
- The date of termination of the ESA.
- Whether any of the materials Isis alleges which are in UMP's possession are trade secrets.
- Whether Isis's claims for conversion and unfair competition are pre-empted under the California Trade Secrets Act.
- The damages suffered by UMP.

Isis believes that there are seven principal issues in the case:

- UMP's failure to pay Isis for product it invoiced and supplied to UMP.
- UMP's failure to make required exclusivity payments.
- UMP's failure to meet minimum purchase commitments.
- UMP's failure to return Isis's property and proprietary materials and intellectual property still in UMP's possession.

- UMP's continuing use of Isis's intellectual property and proprietary materials.

- UMP's pre-emptive failure and refusal to permit Isis to cure any alleged defects in its products as required by the ESA and governing law.

- The damages suffered by Isis.

## III. LIKELIHOOD OF ADDING PARTIES AND AMENDING PLEADINGS

At this time, and barring any additional facts which may come to light during discovery, the Parties do not anticipate adding additional parties.

UMP believes that, based upon the facts at issue, it potentially has additional claims against Isis. Accordingly, there exists a likelihood that UMP will seek to amend its pleadings in order to assert additional causes of action.

Isis does not presently anticipate amending any pleadings.

## IV. ISSUES TO BE DETERMINED BY MOTION

Depending on the facts that come to light during discovery, UMP anticipates filing a motion for summary judgment, or other request for a judicial determination of liability, with respect to Isis's liability under some or all of the causes of action in the Complaint. UMP expects that issues of damages will need to be tried to a jury.

Isis anticipates filing a motion for summary judgment or other request for a judicial determination of liability on all or part of some of its claims or defenses.

## V. SETTLEMENT DISCUSSIONS

Prior to the filing of the Complaint, the Parties engaged in discussions to resolve the issues without litigation, which ended when the litigation was filed. During their Rule 26(f) meet and confer, counsel for the Parties again broached the subject of settlement and both Parties indicated a general interest in such discussions, but no meaningful progress has been made as of yet.

Pursuant to Local Civil Rule 16-15.4, the Parties recommend and agree to pursue Settlement Procedure No. 3—participation in a non-judicial dispute resolution proceeding. Isis proposed the names of multiple mediators at the January 7, 2011 meet-and confer, and the Parties are currently negotiating which mediator will oversee the mediation, and have agreed to mediate this matter as soon as practicable.

## VI. DISCOVERY PLAN

### A. Rule 26(a)(1) Disclosures

The Parties agree that they will exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on or before February 4, 2011. The Parties do not otherwise propose any changes to the form, scope or requirements of Rule 26(a)(1).

### B. Scope of Discovery

The Parties believe that discovery will be needed on the following topics:

1. UMP's and Isis's performance under the ESA;
2. UMP's and Isis's performance under the acceptance agreement;
3. Isis's conduct concerning costs and pricing;
4. Whether UMP's conduct was intentional and aimed at injuring Isis;
5. Whether Isis delivered defective and/or non-conforming products;
6. Whether UMP failed or refused to permit Isis to cure any alleged defects or non-conformities in the products;
7. Whether UMP wrongfully refused to enter into an acceptance agreement for a certain patch product;
8. Whether Isis returned UMP's property and proprietary materials;

9. Whether UMP returned Isis's property and proprietary materials;

10. Whether Isis's materials that are in UMP's possession are trade secrets;

11. Identification and designation of Isis's trade secrets;

12. Whether UMP has improperly used or is continuing to use Isis's trade secrets or proprietary materials;

13. Whether UMP suffered any damages as a result of Isis's conduct and the amount of any such damages;

14. Whether Isis suffered any damages as a result of UMP's conduct and the amount of any such damages;

15. Isis's affirmative defenses to UMP's claims;

16. UMP's affirmative defenses to Isis's claims.

### C. Fact and Expert Discovery Schedule

The Parties agree that discovery should be conducted in two phases. Accordingly, the Parties have agreed on the following proposed discovery schedule:

| Deadline | Parties Propose |
| --- | --- |
| Fact Discovery Cut-Off | December 30, 2011 |
| Expert Disclosures | January 18, 2012 |
| Rebuttal Expert Disclosures | February 3, 2012 |
| Expert Discovery Cut-Off | March 2, 2012 |

### D. Electronically Stored Information

The Parties have met and discussed electronically stored information. The Parties agree to use their reasonable best efforts to produce electronically stored information in the format reasonably requested by the requesting party.

    **E.**    **Claims of Privilege and/or Protection**

The Parties agree that a protective order governing discovery and production of potentially confidential and/or privileged information should be entered in this case. The Parties agree to submit to the Court a Stipulated Protective Order on or before January 28, 2011.

    **F.**    **Discovery Limitations**

At this time, the Parties do not anticipate the need to increase the number of depositions beyond the presumptive limit of ten (10) per side (excluding expert depositions) as provided by Federal Rule of Civil Procedure 30(a)(2)(A)(i). Absent good cause shown, all fact depositions shall occur on or before the fact discovery cutoff date and all expert depositions shall occur on or before the expert discovery cutoff date.

**VII.   TRIAL-RELATED ISSUES**

    **A.**    **Trial by Jury or to The Court**

A jury trial has been demanded by both Parties on all issues so triable.

    **B.**    **Estimated Length of Trial**

At this time, the Parties estimate the length of trial as eight (8) days.

**VIII.  OTHER ISSUES AFFECTING THE STATUS OR MANAGEMENT OF THE CASE**

The Parties agree that this is not a complex case, insofar that the Manual for Complex Litigation (4th ed.) should not be used in this case. At this time, the Parties are unaware of any other issues affecting the status or management of the case.

## IX. PROPOSED SCHEDULE

The Parties have agreed on the following proposed dates:

| Deadline | Parties Propose |
|---|---|
| Fact Discovery Cut-Off | December 30, 2011 |
| Expert Disclosures | January 18, 2012 |
| Rebuttal Expert Disclosures | February 3, 2012 |
| Expert Discovery Cut-Off | March 2, 2012 |
| Dispositive Motion Cut-Off | April 30, 2012 |
| Motion in Limine Cut-Off | June 4, 2012 |
| Final Pre-Trial Conference | June 4, 2012 |
| Trial | June 19, 2012 |

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Dated: January 14, 2011 | **O'MELVENY & MYERS LLP** |
| 4 | | |
| 5 | | |
| 6 | | By: /s/ Brian Neach |
| | | Brian Neach |
| 7 | | |
| 8 | | BRETT J. WILLIAMSON (S.B. #145235) |
| | | AMY J. LAURENDEAU (S.B. #198321) |
| 9 | | BRIAN NEACH (S.B. #242801) |
| | | O'MELVENY & MYERS LLP |
| 10 | | 610 Newport Center Drive, 17th Floor |
| | | Newport Beach, CA 92660 |
| 11 | | Telephone: (949) 760-9600 |
| | | Facsimile: (949) 823-6994 |
| 12 | | |
| | | Attorneys for Plaintiff and Counterdefendant |
| 13 | | UNIVERSITY MEDICAL PHARMACEUTICALS CORP. |
| 14 | | |
| 15 | | |
| 16 | Dated: January 14, 2011 | **PROSKAUER ROSE LLP** |
| 17 | | |
| 18 | | |
| 19 | | By: /s/ S. Montaye Sigmon |
| 20 | | S. MONTAYE SIGMON (S.B. #256192) |
| | | PROSKAUER ROSE LLP |
| 21 | | 2049 Century Park East 32nd Floor |
| | | Los Angeles, CA 90067-3206 |
| 22 | | Telephone: (310) 557-2900 |
| | | Facsimile: (310) 557-2193 |
| 23 | | |
| | | HANK L. GOLDSMITH (*pro hac vice*) |
| 24 | | DANIEL P. GOLDBERGER (*pro hac vice*) |
| | | PROSKAUER ROSE LLP |
| 25 | | 1585 Broadway |
| | | New York, New York 10036-8299 |
| 26 | | Telephone: (212) 969-3000 |
| | | Facsimile: (212) 969-2900 |
| 27 | | |
| 28 | | |

PROOF OF SERVICE

The undersigned hereby certifies that a true copy of the parties' JOINT 26(f) REPORT was served upon the attorneys of record for each party to the above-entitled cause through the Court's CM/ECF electronic filing system on the 14th day of January 2011.

/s/ Brian Neach

_____
Brian Neach

**Attorneys for Defendant and Counterclaim Plaintiff:**

**S. Montaye Sigmon**
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Email: msigmon@proskauer.com

**Hank L. Goldsmith**
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Email: hgoldsmith@proskauer.com

**Daniel P. Goldberger**
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Email: dgoldberger@proskauer.com